IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**DONALD R. WEST**,

Plaintiff,

v.                                                        No. CIV 12-269 BB/LAM

**RIVERSIDE RESEARCH,**

Defendant.

## MEMORANDUM  OPINION

THIS MATTER is before the Court for consideration of a motion to dismiss filed by Defendant.  [Doc. 3] Having considered the submissions of the parties and the applicable law, the Court will grant the motion in part and deny it in part, for the reasons discussed below.

### Summary of Facts and Procedure

Plaintiff was employed by Defendant in a professional capacity and worked in the Washington, D.C. area.  In early 2009 he was detailed for a two-year assignment with the United States Air Force ("USAF") under the auspices of the Intergovernmental Personnel Act ("IPA"), 5 U.S.C. §§  3371-3376.  The assignment was to be performed in Las Cruces, New Mexico, and Plaintiff relocated there.  At the end of the two-year period, the assignment was extended for another two-year period as allowed by the IPA, with the proviso that the position would be funded in six-month increments and the assignment would be terminated if the necessary funds did not materialize.  In January 2012, the assignment was indeed terminated, presumably due to lack of funding.  At that point Defendant, rather than retaining Plaintiff as an employee, allegedly placed him on leave without pay and then terminated his employment in February 2012.  Plaintiff almost immediately filed this lawsuit in state court, alleging claims of breach of an express contract, breach

of an implied contract, and wrongful termination in the form of a retaliatory discharge in violation of public policy.  Defendant removed the case to federal court on the basis of diversity jurisdiction, and the instant motion to dismiss ensued.  Plaintiff thereafter filed an amended complaint [Doc. 11], which will be the basis of this opinion.

**Standard of Review**

In considering a motion to dismiss, the Court must accept the factual allegations in the complaint as true and resolve all reasonable inferences in Plaintiff's favor.  *See Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir.1998).  Dismissal for failure to state a claim is not appropriate unless it appears beyond doubt that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*  (citations omitted).  As the Supreme Court and Tenth Circuit have recently discussed, however, in  reviewing a motion to dismiss, this Court must look for plausibility in the complaint.  *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir.2007).  "Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.2008).

Also, it should be noted that Plaintiff's amended complaint attaches and incorporates a number of documents, including the written agreement that is the subject of his contract claims. The Court may consider these materials in its analysis without converting this motion into a motion for summary judgment.  *See Pace v. Swerdlow,* 519 F.3d 1067, 1072-73 (10th Cir. 2008).

**Discussion**

**Breach of Express Contract:** In connection with Plaintiff's initial assignment to the USAF and the renewal of that assignment, written agreements were executed, both of which were entitled "Assignment Agreement."  [Doc. 10, Exhs. B and C]  Each of these documents contained a

2

provision stating as follows: "at the completion of the assignment, the participating employee will be returned to the position he or she occupied at the time this agreement was entered into or a position of like seniority, status and pay." [*Id.*, p. 4, Part 15]  Plaintiff contends this provision created a contractual requirement obligating Defendant to retain him as an employee once his assignment with the USAF was terminated.  He also contends Defendant breached this requirement by first suspending him without pay and then terminating his employment immediately following the end of his USAF assignment.

In response to Plaintiff's contentions Defendant first argues that Plaintiff was not a party to either Assignment Agreement.  Instead, maintains Defendant, the Agreements were contracts solely between the USAF and Defendant, and as a non-party Plaintiff is not entitled to enforce any of the provisions contained in those Agreements.  Defendant points to Part 3 of each Agreement, which identifies the "PARTIES TO THE AGREEMENT" as the "Department of the Air Force" and "Riverside Research Institute."  Defendant also cites a case from the Court of Claims which held that an employee assigned under the IPA to the federal Environmental Protection Agency was not a party to the assignment agreement and had no contract with the United States.  *Hazra v. United States*, 231 Ct.Cl. 835, 1982 WL 25322 (Ct. Cl. 1982).

The Court agrees that Part 3, standing alone, seems to exclude Plaintiff as a party to either Assignment Agreement.  However, other portions of the documents as well as the surrounding circumstances raise an ambiguity as to this question.  As Plaintiff points out, he was required to sign each Agreement.  [Doc. 10, Exhs. B and C, p. 4, Part 14]  Furthermore, the Agreements contain detailed information relevant to Plaintiff personally, such as the salary he will be paid, his entitlement to raises, payment of his relocation expenses, and his entitlement (or lack thereof) to certain federal-employment benefits.  [*Id.* Parts 8-10]  Finally, a federal regulation promulgated pursuant to authority granted by the IPA requires "the assigned employee and the Federal agency"

3

as well as the employee's current employer to "**enter into a written agreement** recording the obligations and responsibilities of the **parties**..."  5 C.F.R. §334.106 (emphasis added).  It is certainly possible that Defendant's argument is correct, and the only actual parties to the Assignment Agreements were those specifically identified as such, the USAF and Defendant.  However, the specific focus in the Agreements on items that would normally be set out in an employment contract, such as Plaintiff's salary, as well as the cited regulation's reference to Plaintiff as entering into a written agreement, are sufficient to muddy the waters with respect to this issue.

In New Mexico, if a contract is ambiguous on a certain point, extrinsic evidence may be considered to resolve that ambiguity.  In fact, extrinsic evidence may even be considered to determine whether seemingly-unambiguous language in a contract is in reality not what the parties intended.  *See, e.g., Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993); *Sisneros v. Citadel Broadcasting Co.*, 142 P.3d 34, 39 (N.M. App. 2006).  Plaintiff's submissions have raised enough of an ambiguity as to whether he was a party to the Assignment Agreements to require consideration of extrinsic evidence to resolve that question.[1]

In reaching the above conclusion, the Court has considered the *Hazra* case cited by Defendant, but finds it unpersuasive for two main reasons.  First, the *Hazra* court was not applying New Mexico law, which is extremely generous in its consideration of contractual ambiguities and extrinsic evidence.  Second, the *Hazra* case contains no analysis of contract law or possible ambiguities in the document in question, and cites no authority in support of its statement except a

---

[1]The Court notes the concept of considering extrinsic evidence to resolve an ambiguity applies not just to the material terms of a contract, but to the question of identifying the parties to a contract. *See, e.g., Astar Abatement, Inc. v. Cincinnati City Sch. Dist. Bd. of Educ.*, 2012 WL 481799 (S.D. Ohio 2012, unpublished); *Wise Constr., LLC v. Boyd*, 2011 WL 864388 (Tenn. Ct. App. 2011, unpublished).

cf. cite to a case that has nothing to do with the IPA.  As such, it is not persuasive analogous authority for the Court's application of New Mexico ambiguous-contract law.

The Court also finds Plaintiff's submissions are sufficient to raise a viable legal issue as to whether he was a third-party beneficiary of the Assignment Agreements, even if he should not be considered an actual party to them. Under New Mexico law, a third party is a beneficiary of a contract, and may enforce that contract, if the actual parties to the contract intended to benefit that third party.  *See Starko, Inc. v. Presbyterian Health Plan, Inc.*, 276 P.3d 252, 276 (N.M. App. 2011). The intent to benefit the third party may appear in the language of the contract itself, or can be demonstrated with extrinsic evidence.  *See id.*  A third party may be a beneficiary of a contract even where the third party is not specifically referenced by name in the contract.  *Id.*  Significantly, the question of whether an individual is a third-party beneficiary of a contract is usually an issue of fact, not law.  *Id.*

In the case before the Court, Plaintiff was specifically named in the Agreements and was required to sign them.  In addition, an obvious interpretation of the provision requiring that he be returned to his previous provision, or to one with similar seniority, status, and pay, is that he not suffer harm to his career with his employer as a result of accepting the assignment with the USAF. Interpreted in this way, the provision can only be read as intending to protect and thereby benefit Plaintiff, making him a third-party beneficiary of the provision.

Defendant has advanced an alternative construction of the provision that would undercut the above discussion, arguing the provision was for Defendant's benefit and not Plaintiff's.  According to Defendant, the intent of the provision was to prevent the USAF from offering Plaintiff a permanent position and thus "stealing" him away from Defendant.  While this may be a plausible interpretation of the provision, at this motion-to-dismiss point in the proceedings the Court must accept the interpretation that is favorable to Plaintiff.  Doing so, the Court finds extrinsic evidence

5

must be considered to determine whether Plaintiff was an intended beneficiary of the provision, and was thus a third-party beneficiary of the Assignment Agreements. *Cf., e.g., Cox v. NAP Constr. Co., Inc.*, 10 N.Y.3d 592, 600-02 (N.Y. 2008) (laborers and mechanics were third-party beneficiaries of contracts between state agency and building contractors that required contractors to pay a certain wage to plaintiffs). [2]

Defendant contends that even if Plaintiff can show he was a party to the Agreements, or was entitled to enforce them as a third-party beneficiary, the Agreements establish that Defendant could terminate Plaintiff's employment at any time and for any reason.  Defendant relies on Part 13, Section 34B of the Agreement, which states "I have been informed that my assignment may be terminated at any time at the option of the Federal agency or [my employer]."  [Doc. 10, Exhs. B, C]  The fallacy of Defendant's argument is immediately apparent.  This provision does not reserve Defendant's right to terminate Plaintiff's employment, but only the assignment to which he has been detailed.  Once that assignment was terminated, assuming Plaintiff's contract claim is meritorious, the reinstatement provision would take effect.  Therefore, the provision relied on by Defendant does not dispose of Plaintiff's claim.

Defendant has raised a fall-back argument that is not sufficient to support dismissal at this point, but with further factual development has the potential to vitiate the breach-of-contract claim or to limit the damages recoverable under that claim.  The argument proceeds as follows:  (a) Plaintiff maintains he was entitled to be returned to his previous position with Defendant; (b) that

---

[2]In reaching this result, the Court has again considered the *Hazra* case relied on by Defendant.  231 Ct. Cl. 835.  That case rejected the idea that the assigned employee was a third-party beneficiary of the assignment agreement involved in that case.  Again, however, the case contains no analysis of third-party-beneficiary law, and states its conclusion in one sentence with no citation to authority.  There is no indication whether the agreement contained a provision that could be read to specifically benefit the assigned employee, as is the situation in this case.  For these reasons, the Court finds the *Hazra* case unpersuasive on this point.

position was an at-will position (Plaintiff does mention in his amended complaint that Defendant's handbook contains a statement indicating employment with Defendant is at will); (c) Defendant reinstated Plaintiff, then terminated his employment, as it was entitled to do since his employment was at will; (d) Plaintiff has therefore already received the remedy he has requested; and (e) any other result would be absurd, because Plaintiff would in essence be claiming he was entitled to employment in perpetuity once he returned to his position with Defendant following the end of his assignment with the USAF.

Some of these points may eventually prove meritorious. At this time, however, the allegations of the amended complaint are to the effect that Defendant did not return Plaintiff to his previous position once his assignment ended; instead, he was immediately placed on leave-without-pay status and then terminated a week or so later. As to the employment-in-perpetuity issue, of course no at-will employee can claim entitlement to a job in perpetuity. On the other hand, assuming the provision relied on by Plaintiff is enforceable, it could be argued the purposes of that provision may not be served by allowing an immediate termination of employment simply because he held an at-will position. Further evidence is needed as to Plaintiff's and Defendant's understandings regarding how he would be treated following his return from assignment with the USAF, whether Plaintiff's seniority status might have allowed him to "bump" a more junior employee, the manner in which other returning "assignees" may have been treated by Defendant[3], and other considerations not apparent to the Court at this point. It is not possible to rule as a matter of law that Plaintiff has no remedy if his breach-of-contract claim can be proven to have merit.

---

[3]For example, in the amended complaint Plaintiff alleges he is "aware" of instances in which employees have been maintained on Defendant's payroll "for as long as one year" while they wait for new contract assignments. It is possible facts could be elicited that would establish a pattern of conduct by Defendant pervasive enough to be relied upon by assigned employees such as Plaintiff.

**Breach of Implied Contract:**  As an alternative to his express-contract claim, Plaintiff maintains an implied contract was created that limited Defendant's right to terminate his employment.   "Employment is generally terminable at will, absent an express contract to the contrary." *West v. Washington Tru Solutions, LLC*, 224 P.3d 651, 653 (N.M. App. 2009).   An employer can create an exception to this rule, however, by impliedly limiting its ability to terminate an employee at will.  *See id.*  The employer can do so "by either providing that termination will only be for cause or providing for certain procedural protections prior to termination."  *Id.* For such an implied contract to be created, the employer's words or conduct must "support a reasonable expectation on the part of employees that they will be dismissed only in accordance with specified procedures or for specified reasons."  *Id.*   The totality of the circumstances of the employment relationship must be examined in order to decide whether the at-will employment relationship has been modified.  *See id.*  The issue of whether an implied contract exists is usually a question of fact that is not ordinarily amenable to resolution in pre-trial proceedings such as summary judgment. *See id.* Defendant thus has a heavy burden to meet to obtain dismissal of this claim at this early stage of the case.

It is true that the implied contract argued for by Plaintiff in this case does not seem to fit into the usual mode of such contracts.   As the *West* opinion states, the ordinary implied-contract argument attempts to establish that the employee may only be discharged for good cause, or after certain procedures have been followed.  *See id.*  Plaintiff has not argued that this is the nature of his implied-contract claim, and has pointed to no handbook language or conduct by Defendant that would create these types of expectations.  Instead, Plaintiff appears to contend only that the implied contract prevented Defendant from terminating his employment immediately after the end of his assignment to the USAF.  In that sense, this claim duplicates his express-contract claim and relies largely on the same materials (such as the reinstatement provision in the Agreements, as well as the

applicable regulation) as does that claim.  While Plaintiff does point out an alleged statement contained in Defendant's employee handbook indicating that "our employees are our most valuable asset," the Court agrees with Defendant that this type of general declaration cannot give rise to any sort of specific, reasonable expectation that an employee will be treated in a certain way when it comes to termination decisions.  Plaintiff will of course not be allowed to obtain double recovery should his contract claims survive further factual development.  However, he is entitled to attempt to adduce facts that would support his implied-contract claim in the event that his express-contract claim proves to lack merit.  At this time the Court will not dismiss this claim.

      **Retaliatory Discharge in Violation of Public Policy:**  Plaintiff has alleged a claim based on another exception to the at-will employment rule.  He maintains he was discharged in violation of New Mexico's public policy, and therefore has a viable cause of action for retaliatory discharge. The Court disagrees.  It should first be noted that a claim for public-policy-based retaliatory discharge is only available to at-will employees; if Plaintiff were to prove he actually had a contractual right not to be treated as an at-will employee, as discussed above, this cause of action would not be available to him.  *See Barreras v. State of New Mexico Corrections Dep't,* 62 P.3d 770, 775 (N.M. App. 2002).

      In any event, Plaintiff has failed to state a viable claim for this type of retaliatory discharge. An employee attempting to prevail on such a claim must show he was discharged because he performed acts that public policy has authorized or would encourage, or because he refused to do something required by an employer that public policy would condemn.  *See Garrity v. Overland Sheepskin Co. of Taos*, 917 P.2d 1382, 1386 (N.M. 1996).  Plaintiff seeks to meet this requirement by arguing that his assignment to the USAF served the public interest, and he therefore could not be fired for accepting that assignment.  There are two problems with this argument.  First, according to Plaintiff's own allegations and the attachments to his amended complaint, he was not terminated

because he accepted the assignment with the USAF; he was terminated only after that assignment ended.  Second, Plaintiff's argument would open much too large a hole in the at-will employment doctrine.  There are many, many employees performing jobs that serve the public interest in one way or another, such as teachers, firefighters, medical personnel, law-enforcement personnel, government officials, and military personnel.  Accepting Plaintiff's argument would mean that none of these public servants could be considered at-will employees; the Court rejects the suggestion that New Mexico would expand the public-policy-retaliatory-discharge theory to such an extent.

Plaintiff next argues his right to reinstatement was protected by the regulation discussed above, requiring that the employee be allowed to resume the duties of his former position or reassigned to another position of like pay and grade.  5 C.F.R. §334.107(b).[4]  Plaintiff then refers to language in certain New Mexico cases applying the public-policy-discharge doctrine to situations in which a statute provides certain protections to an employee, but does not provide a cause of action to enforce those protections.  *Shovelin v. Central New Mexico Elec. Co-op., Inc.*, 850 P.2d 996, 1006 (N.M. 1993).  However, "[e]very statute enacted by the legislature is in a sense an expression of public policy but not every expression of public policy will suffice to state a claim for retaliatory discharge."  *Id.*  In this case we are not even dealing with a statute; the IPA does not mention the reinstatement requirement.  Instead, the source of the public policy relied on by Plaintiff is merely a regulation that may or may not apply to non-federal employees such as Plaintiff.  Furthermore, the regulation does not implicate any larger public concerns such as an employee's right to file a worker's compensation claim or to receive a pension upon retirement.  *See, e.g.,Michaels v. Anglo American Auto Auctions, Inc.*, 869 P.2d 279, 281-2 (1994); *Salazar v. Furr's, Inc.,*629 F.Supp. 1403,

---

[4]The Court notes this regulation could very well apply only to federal employees who have been detailed to other agencies.  The provision begins with the limiting term "Federal assignees" and contains language specific to federal employment, such as the reference to an employee's "grade."  The Court need not resolve that issue in this opinion, and takes no position on it.

1409 (D.N.M.1986).  It should be noted that the public-policy exception to at-will employment is construed in limited fashion.  *See Shovelin*, 850 P.2d at 1007.  If, as *Shovelin* held, the right to run for public office is not a sufficient expression of public policy to support a retaliatory-discharge claim, the regulation in question here is similarly not sufficient to justify expanding the reach of such a claim.  *See* 850 P.2d at 1011.  The motion to dismiss will be granted as to this claim.

**Possible Claim Based on Violation of Regulation:**  There is some indication in the amended complaint that Plaintiff is attempting to bring a cause of action based directly on the alleged violation of 5 C.F.R. §334.107.  To the extent Plaintiff may be attempting to raise such a claim, his effort is to no avail.  As Defendant points out, several courts have held the IPA creates no private right of action.  *See, e.g., Canfield v. Sullivan*, 774 F.2d 1466, 1470 (9th Cir. 1985); *Hawkins v. Caldwell*, 587 F.Supp. 98, 107 (D.C. Ga. 1983).  The Court is aware of no contrary authority, and has been pointed to none by Plaintiff.  If the IPA does not create a private cause of action, it is clear there can be no private right of action that is based not on the IPA, but on the regulations promulgated pursuant to that statute.  This claim, if indeed Plaintiff was attempting to raise it, will be dismissed.

**Conclusion**

Based on the foregoing discussion, Plaintiff will be allowed to pursue his breach-of-contract claims.  His claim for retaliatory discharge in violation of public policy will be dismissed, as will any claim he may have attempted to raise that is based directly on the alleged violation of a regulation.

Dated this 1st day of August, 2012.

_____
**BRUCE D. BLACK**
United States District Judge